# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

| | |
|---|---|
| **EDDIE A. MAYES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 3:08-00922** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered May 4, 2010 (Document No. 12.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 11.)

The Plaintiff, Eddie A. Mayes (hereinafter referred to as "Claimant"), filed an application for DIB on October 10, 2002, alleging disability as of January 14, 2002, due to heart problems with defibrillator/pacemaker, some depression caused by medical condition, and grand mal seizures. (Tr. at 81-83, 84, 80.) The claim was denied initially and upon reconsideration. (Tr. at .) By decision dated December 9, 2002, the ALJ found that Claimant was entitled to benefits as of January 14, 2002. (Tr. at 18.)

Subsequently, on September 15, 2004, Claimant was notified that his benefits would be discontinued due to cessation of disability. (Tr. at 39-41.) On reconsideration, the agency again found

that Claimant's disability had ceased. (Tr. at 46-57.) On June 30, 2005, Claimant requested a hearing before an ALJ. (Tr. at 72.) Hearings were held on October 6, 2006 before the Honorable James D. Kemper, Jr. (Tr. at 489-94, 495-540.) By decision dated January 22, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 18-27.) The ALJ's decision became the final decision of the Commissioner on May 13, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On July 14, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations require the ALJ to perform an eight-step sequential analysis to determine whether a claimant should continue to receive benefits. 20 C.F.R. § 416.994(f) (2007). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.994(f)(1). If the claimant is not, the second inquiry is whether the claimant has an impairment or combination of impairments which meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.994(f)(2). If the claimant does not, the third inquiry is whether there has been medical improvement as shown by a decrease in medical severity. Id. § 416.994(f)(3). If there has been no medical improvement, the ALJ should proceed to the fifth inquiry. Id. If there has been medical improvement, the fourth inquiry is whether the medical improvement is related to the claimant's ability to work. Id. § 416.994(f)(4). If the medical improvement is related to the claimant's ability to work, the ALJ must proceed to the sixth

inquiry. Id. If the improvement is not related to claimant's ability to work, the ALJ is to proceed to the fifth inquiry. Id. The fifth inquiry is whether any of the exceptions listed at 20 C.F.R. §§ 404.1594 or 416.994(d) or (e) apply. Id. § 416.994(f)(5). If they do not, claimant's benefits are continued. Id. If one of the exceptions listed in subsection (e) applies, the ALJ must proceed to the sixth inquiry. Id. If one of the exceptions listed in subsection (f) applies, the claimant will be found not disabled. Id. At the sixth inquiry, the ALJ must determine if the claimant has a severe impairment. Id. § 416.994(f)(6). If a severe impairment is present, the seventh inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.994(f)(7). If not, the eighth and final inquiry is whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.994(f)(8).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since September 1, 2004, the date Claimant's disability ended. (Tr. at 20, Finding No. 3.) Under the second inquiry, the ALJ found that as of September 1, 2004, Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 5.) Next, the ALJ found that Claimant had experienced medical improvement related to his ability to work as evidenced by a current residual functional capacity, reduced by nonexertional limitations. (Tr. at 21, Finding No. 6.) Pursuant to the regulations, the ALJ found at the sixth inquiry that Claimant suffered from the severe impairments of ventricular arrythmias, hypertension, seizure disorder, history of ankle fracture, and anxiety. (Tr. at 22, Finding No. 8.) The ALJ determined that Claimant had the RFC to perform light exertional work, as follows:

> [C]laimant has had, at all relevant times, the following residual functional capacity: light exertional activity which involves lifting and/or carrying of no more than twenty pounds maximum occasionally and ten pounds maximum frequently. He should,

>however, never climb ladders, ropes, or scaffolds, and should only occasionally climb, balance, stoop, kneel, crouch, and crawl. He should also avoid extreme cold and all hazards.

(Tr. at 23, Finding No. 9.) Under the seventh inquiry, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 26, Finding No. 10.) Nevertheless, the ALJ concluded at the final inquiry that Claimant could perform jobs such as mail sorter and packagers and shipping clerks at the light level of exertion, and dispatchers and assemblers at the sedentary level of exertion, which existed in significant numbers in the national economy. (Tr. at 26-27, Finding No. 14.) On this basis, benefits were denied. (Tr. at 27, Finding No. 15.)

Claimant's Background

Claimant was born on June 26, 1964, and was 41 years old at the time of the administrative hearing, October 6, 2006. (Tr. at 26, Finding No. 11; 81.) Claimant had a tenth grade education and a Generalized Equivalency Diploma, and was able to communicate in English. (Tr. at 26, Finding No. 12; 96.) In the past, Claimant worked as an a rigging foreman. (Tr. at 26, 91, .)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed in his heightened duty to assist the pro se Claimant in this case, including the proper questioning of the VE. (Document No. 10 at 7-10.) Specifically, Claimant asserts that the ALJ unintentionally dissuaded Claimant from obtaining counsel when he indicated that it would be difficult to obtain counsel because it was a cessation of benefits case. (Id. at 8.) Additionally, Claimant asserts that the ALJ failed to offer Claimant the opportunity to question the VE, as was his right. (Id. at 9.)

Claimant asserts that in questioning the VE, the ALJ failed to include limitations regarding his memory problems. (Id.) Furthermore, Claimant asserts that the ALJ failed to address what Claimant's condition was like prior to September 2004, how his condition may have changed, and how any changes may have impacted his ability to work. (Id.) Claimant alleges that the ALJ's hypothetical question failed to address his implanted defibrillator, which prevented him from using welding equipment. (Id. at 9-10.) Claimant notes that his cardiologist, Dr. Chandran, indicated that while Claimant experienced a single shock by the AICD on April 16, there was some possibility of an electrical interference, which could not be conclusively proved or ruled out. (Id.) Claimant therefore alleges, that the ALJ should have included this possibility as a limitation. (*Id.* at 10.)

In response, the Commissioner asserts that though Claimant was unrepresented at the administrative hearing, this fact does not, in itself, provide reason to "upset" the ALJ's decision. (Document No. 11 at 17.) The Commissioner notes that Claimant was advised through correspondence of his right to counsel, and that the record does not indicate any degree of mental or emotional disability that would have prevented Claimant from understanding this right. (Id.) Claimant further notes that the ALJ met with Claimant on August 9, 2006, to discuss Claimant's right to representation. (Id.) Though Claimant purports that the ALJ dissuaded Claimant from obtaining counsel, the Commissioner points out that the ALJ advised Claimant that he could obtain free representation through a legal aid office. (Id.) Claimant indicated that he understood his right to representation and waived this right at the hearing. (Id. at 18.) Regarding questioning of the VE, the Commissioner asserts that because the record as a whole did not support memory problems as testified to by Claimant, any question regarding this hypothetical limitation would not have been relevant. (Id.)

Claimant also alleges that the ALJ erred in assessing Claimant's credibility because he failed to provide citations to the record in support of his conclusions regarding Claimant and his father's

5

testimony. (Document No. 10 at 10-11.) Citing SSR 96-7p, Claimant asserts that the ALJ was required to cite the evidence that supported his conclusions. (Id. at 11.) In response, the Commissioner asserts that contrary to Claimant's allegations, the ALJ cited to evidence that supported his credibility determination. (Document No. 11 at 12-17.) Specifically, the ALJ considered Claimant's longitudinal medical history and cited to objective evidence that supported his determination. (Id. at 13.) Moreover, the ALJ considered the opinion evidence of record and noted that no medical source, whether treating, examining, or reviewing, imposed any permanent work-related limitation on Claimant during the relevant period of time. (Id. at 14.) Finally, the Commissioner asserts that the ALJ considered Claimant's activities of daily living and specifically cited the record regarding his activities. (Id. at 14-17.)

Analysis.

1. Credibility Determination.

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v.

Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2007). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2007).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,

>the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
>Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or]

8

redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 23-24.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms." (Tr. at 24.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 23-25.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity ." (Tr. at 24.)

In assessing Claimant's credibility at step two, the ALJ addressed the seven factors set forth under the Regulations, as well as Claimant's and his father's testimony. (Tr. at 23-24.) With regard to Claimant's cardiac impairment, the ALJ specifically found significant medical improvement as evidenced by the treatment notes of Claimant's treating cardiologist, Dr. Chandran. (Tr. at 24.) He noted Dr. Chandran's reports that his AICD was working well and that he had no episodes of atrial fibrillation since October 2005. (Tr. at 24, 460-65.) The ALJ further noted Dr. Chandran's assessment that Claimant had "done well from a cardiac viewpoint except for some mild chest pains." (Tr. at 24, 460.) Regarding Claimant's blood pressure, the ALJ specifically noted that his blood pressure remained suboptimally controlled but that Claimant failed to follow a low salt low fact diet and exercise regimen. (Tr. at 24, 460.) The ALJ noted the report of Dr. Lewis, Claimant's treating neurophysiologist, in September 2006, that Claimant was doing fairly well, that his cardiac condition remained stable, and that his tension headaches were under adequate control. (Tr. at 24-25, 466.)

9

Regarding seizures, the ALJ noted Dr. Lewis's reports that Claimant's last reported seizure dated back to 2003. (Tr. at 25, 468.) Dr. Lewis opined that Claimant's extensive amount of anxiety may have caused some memory loss. (Id.) Despite the extensive amount of anxiety, Dr. Lewis reported that Claimant's mental status examination was normal on August 22, 2006. (Id.) Though Dr. Hawkins reported that Claimant's seizures and chronic hypertension kept him from returning to work, the ALJ concluded that such opinion was not supported by the record and particularly by Dr. Lewis's reports. (Tr. at 25, 459.)

The ALJ also summarized and discussed the opinion evidence of record. (Tr. at 24-25.) He noted that no medical source imposed "any permanent work-related limitations on the [C]laimant during the relevant time period." (Tr. at 24.) He gave little weight to the opinion of Dr. Hawkins, as discussed above, and accorded great weight to the assessments of Dr. Osborne and Dr. Lim, the state agency medical consultants. (Tr. at 24, 277-84, 298-305.)

Additionally, the ALJ considered Claimant's activities of daily living and noted Claimant's reports that he cooked, performed childcare, played on the computer, picked up around the house, and handled the household finances. (Tr. at 21, 308.) Claimant also was able to care for his own personal needs. (Tr. at 115.)

Accordingly, in view of the foregoing, the undersigned finds that contrary to Claimant's allegations, the ALJ's pain and credibility assessment contained numerous references to the record in support of his findings. The undersigned finds Claimant's arguments in this regard to be without merit.

2. Right to representation.

Claimant also alleges that the ALJ erred in dissuading him from obtaining counsel and from failing to assist him with proper questioning of the VE. (Document No. 10 at 7-10.) As the Commissioner asserts, the undersigned finds that the record contains numerous references wherein

Claimant was advised of his right to representation. The Social Security Administration ("SSA") advised Claimant of his right to representation on many occasions. (Tr. at 29, 40, 47, 72, 74-75, 76, 78-80.) The SSA provided Claimant with a list of organizations who could provide him with free legal representation. (Tr. at 76.) On August 9, 2006, the ALJ met with Claimant in person, "to go over [his] rights to representation, to be represented by a lawyer, or a paralegal, or someone that's qualified in, you know, these types of cases, Social Security cases." (Tr. at 490-94.) Claimant indicated that he understood those rights and that he wanted to proceed without representation. (Id.) At the hearing on October 6, 2006, the ALJ again advised Claimant of his right to representation and Claimant again indicated that he waived his right to representation. (Tr. at 497.) Accordingly, the undersigned finds that Claimant was advised on numerous occasions of his right to counsel and that he knowingly waived such right.

Claimant alleges however, that this matter should be remanded because he proceeded without counsel and because the ALJ failed to assist him in questioning the VE regarding his memory problems. The record as a whole however, does not support any significant memory problems. As discussed above, Dr. Lewis opined that any memory problems probably stemmed from his anxiety or as a side effect of his medications. Likewise, Ms. Catherine Van Verth Sayre, M.A. concluded that Claimant's immediate, recent, and remote memory was within normal limits. (Tr. at 308.) Thus, any questions of the VE regarding Claimant's memory would not have been relevant in the ALJ's decision.

Claimant also alleges that the ALJ erred in failing to indicate in his hypothetical question to the VE that Claimant was not allowed to use welding equipment because of his implanted defibrillator. Though the ALJ did not include such a limitation in his hypothetical questions, in assessing Claimant's RFC, he precluded Claimant from exposure to all workplace hazards. The jobs identified by the VE include those of a mail sorter, packaging and shipping clerk, non-emergency dispatcher, and assembler.

11

Claimant has not demonstrated that these jobs require the use of welding equipment. Accordingly, the undersigned finds that Claimant's allegations are without merit and that substantial evidence supports the ALJ's decision that Claimant could perform jobs in the national economy. The undersigned further finds that Claimant failed to demonstrate that he was prejudiced by the lack of representation. See Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980) (finding that remand is appropriate when "the absence of counsel created clear prejudice or unfairness to the claimant.").

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v.

Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: September 7, 2010.

R. Clarke VanDervort
United States Magistrate Judge